# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 20-0465V
UNPUBLISHED

|  |  |
|---|---|
| SHOSHANA ROBUCK,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: August 21, 2023 |

*Leah VaSahnja Durant*, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.

*Debra A. Filteau Begley*, U.S. Department of Justice, Washington, DC, for Respondent.

### RULING ON ENTITLEMENT[1]

On April 20, 2020, Shoshana Robuck filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act") alleging that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered to her on January 25, 2019. Petition, ECF No. 1 at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished opinion contains a reasoned explanation for the action in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the opinion will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, the record preponderantly supports the conclusion that Petitioner's shoulder injury would not be explained by her prior medical history; that Petitioner suffered the onset of symptoms within 48 hours; that Petitioner's pain and reduced range of motion were limited to her right shoulder; and that no other condition or abnormality is present that would explain Petitioner's symptoms. Petitioner is entitled to compensation under the Vaccine Act.

### I.     Relevant Procedural History

Following an initial status conference on June 23, 2020, Respondent was directed to file a status report providing counsel's informal reaction to Petitioner's claim. ECF No. 11; Non-PDF order, dated July 27, 2020. Respondent did so on December 2, 2020, asserting that several records needed for his evaluation remained unfiled (including records pertaining to Petitioner's mental health history). ECF No. 14 at 2, n.2. Petitioner raised some objections to certain of the requested documents as irrelevant (*see* ECF No. 18 at 1-4). But the dispute was not fully resolved, and eventually (in light of the substantial time this matter had been pending) I ordered the parties to brief the issue of Petitioner's entitlement (including the disputed documents issue). ECF No. 23.

On September 20, 2021, Petitioner filed her Motion for a Ruling on the Record ("Motion") arguing that she has established entitlement to compensation for SIRVA. ECF No. 24. Respondent filed his combined response and Rule 4(c) Report ("Response") on October 22, 2021. ECF No. 26. Noting that a few of Petitioner's medical records appeared incomplete, Respondent argued that Petitioner may have a history of shoulder pain or dysfunction. *Id.* at 8. Respondent also argued that Petitioner has neither established that her symptoms began within 48 hours of vaccination nor that her symptoms were limited to her right shoulder, and that the mental health records were likely relevant to the issue of an alternative explanation for her alleged injury. Response at 8-10.

Petitioner filed her reply ("Reply") on October 29, 2021. ECF No. 27. Among other things, she repeated her contention that the mental health records were irrelevant and otherwise protected from disclosure. Reply at 4. On May 10, 2023, Petitioner filed two additional exhibits as well as a status report and statement of completion confirming that, with the exception of mental health records, "the record in this matter is now complete." ECF Nos. 28-30.

### II.    Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act

Section 11(c)(1). A Petitioner may prevail on his claim if he has "sustained, or endured the significant aggravation of any illness, disability, injury, or condition" set forth in the Vaccine Injury Table (the "Table"). Section 11(c)(1)(C)(i). The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). If a claimant establishes that he has suffered a "Table Injury," causation is presumed.

Section 11(c)(1) also contains requirements concerning the type of vaccination received and where it was administered, the duration or significance of the injury, and the lack of any other award or settlement. *See* Section 11(c)(1)(A), (B), (D), and (E). With regard to duration, a petitioner must establish that he suffered the residual effects or complications of such illness, disability, injury, or condition for more than six months after the administration of the vaccine. Section 11(c)(1)(D).

Effective for petitions filed beginning on March 21, 2017, SIRVA is an injury listed on the Vaccine Injury Table. *See* Vaccine Injury Table: Qualifications and aids to interpretation ("QAI").  42 C.F.R. § 100.3(c)(10). The criteria are as follows:

> A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following: (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection; (ii) Pain occurs within the specified time-frame; (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

*Id.*

## III. Relevant Factual Evidence

I have fully reviewed the evidence, including all medical records, affidavits, and the parties' briefing. I find most relevant the following:

- On November 21, 2017, Petitioner presented to Dr. Stella Gandhi for an annual exam. Ex. 5 at 5-7. The medical record documents Petitioner's complaint of dizzy spells and a discussion concerning "polycystic ovaries." *Id.* at 7. The date of any previous annual exam was not included in this record. However, in a letter dated February 22, 2022

3

(and hence filed during the pendency of this case), Dr. Gandhi explained that she "inadvertently did not include the date of the last physical exam for [Petitioner] in the records from the appointment date of 11/21/2017." Ex. 18 at 1.

- Petitioner sought gynecological care from N.P. Doris Perez on March 16, 2018. Ex. 9 at 7-10. There is no indication that Petitioner's right shoulder was discussed during this visit.

- Petitioner's insurance benefit statements indicate that Petitioner received care from Hilda M. Saliba on or around April 12, 2018. Ex. 10 at 12. The Present on Admission ("POA") indicator notes "generalized anxiety disorder." *Id.*

- Petitioner's insurance benefit statements also indicate that Petitioner received care from Dr. Landis Block in 2018 and 2019. Ex. 10 at 14-22, 28. The POA indicator for these visits note "adjustment disorder with mixed anxiety and depressed mood." *Id.*

- On January 25, 2019, Petitioner presented to Adrian Gonzalez Medical Care ("AG Medical Care") for an annual physical exam. Ex. 2 at 3-5. The record documenting this appointment indicates that Petitioner's medical history included eczema, depression, anxiety, "post-infective IBS," and polycystic ovarian syndrome. *Id.* at 3. During this visit, Petitioner received the flu vaccine in her right deltoid. *Id.* at 4-5.

- Petitioner returned to AG Medical Care on February 8, 2019 (two weeks post-vaccination). Ex. 2 at 6-7. The medical record reflects Petitioner's complaint of "right shoulder pain since . . . flu shot [a] few weeks ago." *Id.* at 6. On exam, Petitioner was determined to have full range of motion, but "pain with resisted abduction" in her right shoulder. *Id.* The note documenting this visit further indicates that Petitioner suffered from "acute pain of right shoulder" with an "unclear etiology. ?shoulder injury after injection." *Id.*

- Also on February 8, 2019, Petitioner underwent an initial physical therapy exam and session for her right shoulder at Young's Physical Therapy & Acupuncture ("Young's"). Ex. 3 at 48-50. The mechanism of injury was noted as "severe pain after injection." *Id.* at 48. On exam, Petitioner exhibited limited range of motion and pain with flexion and external rotation. *Id.* at 47. Petitioner also demonstrated tenderness in several areas associated with her right shoulder. *Id.* Approximately 8 minutes of Petitioner's physical therapy session was dedicated to therapeutic interventions aimed at improving Petitioner's posture, kinesthetic and proprioceptive sensations. *Id.*

- Petitioner participated in seven sessions of physical therapy between February 8 and February 28, 2019. Ex. 3 at 41 - 47. Her chief complaint was consistently noted as right shoulder pain, stiffness, and right "sh[oulder] girdle." *Id.*

- Petitioner returned to Young's on February 19, 2019 for an initial acupuncture evaluation. Ex. 3 at 19. Petitioner's chief complaint was "neck, upper back & R sh[oulder]" pain." *Id.*

- Over the course of around two months, Petitioner attended 15 acupuncture appointments for her "neck/upper back", mid-back and right "shoulder/arm." Ex. 3 at 4-18.

- On February 19, 2019, Petitioner presented to Dr. Sonali Lai at Integrative Spine and Sports for an evaluation of her right shoulder. Ex. 17 at 3-5. Dr. Lai noted that Petitioner reported persistent pain "for the past week following receiving the flu shot" and that "[t]hey localize the pain to the anterior and anterolateral shoulder." *Id.* at 3.

- Petitioner returned to Integrative Spine and Sports on March 11, 2019 for a re-evaluation of her right shoulder. Ex. 17 at 7-9. Petitioner's pain was noted to have "been persistent for the past few weeks following the flu shot from her PCP." *Id.* at 7.

- On March 20, 2019, Petitioner presented to NY Presbyterian for an MRI of her right shoulder due to pain and weakness. Ex. 4 at 3-4. The MRI revealed "[m]ild rotator cuff tendinosis" with no rotator cuff tear. *Id.*

- Petitioner continued physical therapy through March and April 2019. Ex. 3 at 20-30, 39-40. Her chief complaint continued to be noted as right shoulder pain, stiffness, and her right shoulder girdle. *Id.* Approximately 8 minutes of each session was dedicated to therapeutic interventions aimed at improving Petitioner's posture, kinesthetic and proprioceptive sensations. *Id.*

- Following an approximate one-month break, Petitioner returned to physical therapy on May 13, 2019. Ex. 3 at 36. Petitioner's chief complaints were noted to include headaches, difficulty sleeping, and issues with her neck, right shoulder, and upper back. *Id.* The evaluation form reflects that the "[h]istory of [p]resent condition/mechanism of injury" was "chronic pain caused by poor posture from working, daily life / after injection." *Id.*

- Petitioner's participation in physical therapy continued throughout the spring and summer of 2019, with an additional focus on her cervical spine. Ex. 3 at 31-34; 51-60.

5

Her chief complaint was consistently noted as "c/s t/s tightness, stiffness, pain, weakness r[ight] shoulder pain." *Id.*

- Petitioner returned to AG Medical on July 2, 2019, for a follow-up examination regarding her shoulder symptoms. Ex. 2 at 8. Although Petitioner reported some improvement, the medical record reflects that her shoulder pain was "still present despite physical therapy." *Id.*

- On July 23, 2019, Petitioner presented to Dr. Charles M. Jobin, an orthopedic surgeon, at Columbia University Medical Center. Ex. 6 at 2-3. Although Petitioner's symptoms included [f]atigue, neck stiffness, and irregular monthly cycles," Dr. Jobin's medical note focuses on Petitioner's complaint of "right shoulder problems that began after a flu shot which was given in January 2019." *Id.* at 2. Dr. Jobin documented Petitioner's report of "immediate[ ] . . . discomfort in the shoulder, trouble raising it up." *Id.* at 2. After performing a physical examination and considering Petitioner's MRI, Dr. Jobin assessed Petitioner with "[r]ight shoulder flu shot bursitis and biceps tendinitis" and administered a steroid injection to Petitioner's right shoulder. *Id.* at 2-3.

- Petitioner underwent a physical therapy evaluation on September 11, 2019 (over seven months after vaccination). Ex. 13 at 5. The mechanism of Petitioner's injury was identified as "[e]xcessive work, stress and attention during work leads to pain in midback, upper back, neck and shoulder." *Id.* The preliminary diagnosis was "Midback, Upper neck pain, R[ight] shoulder pain, Fibromyalgia." *Id.* At 7.

- Between September 11 and October 3, 2019, Petitioner attended four additional sessions of physical therapy. Ex. 13 at 1-7. Her chief complaint was noted to be "t/s c/s tightness, stiffness, pain, weakness [and] R[ight] shoulder pain." *Id.* at 1-4.

- Petitioner presented for a physical exam on October 18, 2019. Ex. 14 at 1-9. Petitioner's medical history was noted to include anxiety, depression, polycystic ovary syndrome, and "R shoulder injury (SIRVA)" and further reflect that in "Jan. 2019 . . . [Petitioner] went to get a flu shot and got infected – went to get a steroid shot/could not lift shoulder." Ex. 14 at 1- 2.

6

## IV.  Findings of Fact Regarding Contested QAI Criteria for Table SIRVA

### A. Prior Condition

The first QAI requirement for a Table SIRVA is lack of a history revealing problems associated with the affected shoulder which were experienced prior to vaccination and would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i).

Respondent argues that "it is not clear if [P]etitioner had any shoulder pain or dysfunction prior to her vaccination" because "some information may be missing" from a singular record generated by Dr. Gandhi on November 21, 2017 (which notably precedes the vaccination at issue by more than a year). Response at 2, 8. Respondent specifically points to a sentence fragment contained in the history of present illness:

> Last physical was
>
> also concerned about dizzy spells.
>
> travels a lot for work. 2 months ago was in Japan, awoke with with vertigo, dizziness, lightheadedness with a syncopal episode. lasted 1 week. saw a dr on Tokyo and was told she was fine and prescribed a vertigo medication.

Ex. 5 at 7. Although Respondent suggests that Dr. Gandhi failed to detail Petitioner's full medical history, Dr. Gandhi has submitted a letter explaining that she "inadvertently did not include the date of the last physical exam for [Petitioner]." Ex. 18 at 1. Although this unsworn explanation was offered over four years after the error was made, I find it to be credible based on a common-sense examination of the medical note itself.

Respondent also argues that treatment records generated by Drs. Saliba and Block "could provide evidence as to [P]etitioner's physical state both prior to and immediately after her vaccination." Response at 8. A review of Petitioner's insurance benefits statements indicate that Petitioner received care from these two treaters for mental health issues. *See* Ex. 10 at 12, 14-22, 28. *See also* Ex. 15.

While there is a *remote* possibility that Petitioner's mental health records might shed light on the existence of shoulder pain prior to January 2019, "[t]he mere possibility of a clue does not satisfy the 'reasonable and necessary' standard" that applies to what discovery is permitted in the Program. *Phillips-Deloatch v. HHS*, No. 09-171V, 2015 WL 1950107, at *6 (Fed. Cl. Spec. Mstr. Apr. 9, 2015) (referencing Vaccine Act Section 12(d)(3)(B)). *See also* Vaccine Rule 7 (providing that there is no discovery as a matter of right and that the special master shall determine the scope of discovery); *In re Claims for*

*Vaccine Injuries Resulting in Autism Spectrum Disorder or a Similar Neurodevelopmental Disorder, Various Petitioners v. Sec'y of Health & Human Servs.*, 2007 WL 1983780 at *6 (Fed. Cl. Spec. Mstrs. May 25, 2007) (providing that a special master has "broad discretion" in determining what material is necessary or not, in the overall context of the case).

The Vaccine Guidelines recommend that in a claim involving a vaccinee who is an adult, "the filed records should include all records from all primary care providers for three years prior to the administration of the vaccine(s) alleged to be causal."[3] Though few, Petitioner has filed these records. *See* Ex. 5 at 1 (cover page requesting "all medical records in [Dr. Gandhi's] possession dated 1/1/2016 present . . . Please be sure to include all archived records and all records located in storage. Please release any and all records ranging from Dr. Stella Gandhi[']s office and any other physicians"). *See also* Ex. 18 at 1 (February 22, 2022 letter from Dr. Gandhi stating that "complete medical records have been sent . . . as requested."). Additionally, Petitioner has filed multiple records from other medical providers which appear to provide a comprehensive picture of her medical condition. These records do not reveal any evidence that Petitioner suffered a pre-vaccination history of problems that would explain her post-vaccination shoulder symptoms. And the possibility of an alternative explanation for Petitioner's injury that might be found in these unfiled records is simply too unlikely to make it reasonable to require the records be filed in this case.

Accordingly, I find that Petitioner has met the first criterion to establish a Table SIRVA.

### B. Onset

A petitioner alleging a SIRVA claim must also show that she experienced the first symptom or onset within 48 hours of vaccination (42 C.F.R. § 100.3(a)(XIV)(B)), and that her pain began within that same 48-hour period (42 C.F.R. § 100.3(c)(10)(ii) (QAI criteria)). While Respondent acknowledges that Petitioner's "report of right shoulder pain on February 8, 2019 . . . assists in establishing the onset of her condition," he argues that this piece of evidence "cannot be viewed in a vacuum, particularly given the lack of pre-vaccination records, missing records and conflicting medical records."[4] Response at 8.

---

[3] Guidelines for Practice Under the National Vaccine Injury Compensation Program (as revised April 24, 2020), available at https://www.uscfc.uscourts.gov/vaccine-guidelines.

[4] Respondent argues that "[n]o effort has been made to explain the discrepancies between [P]etitioner's visits on February 8, 2019." Response at 9. Specifically, Respondent notes that on February 8, 2019, Dr. Gonzalez observed that "[P]etitioner could move her right shoulder through a full range of motion . . . and [only experienced] increased pain with resisted abduction" - but that PT notes from the same date indicate that Petitioner suffered extreme limitations in right shoulder range of motion. Response at 8-9, citing Ex. 2

Despite Respondent's contentions, the totality of the record – not just a lone document from February 2019 – supports the conclusion that Petitioner's shoulder pain most likely began within 48 hours of vaccination. I recognize that Petitioner's medical records do not reflect a precise date of onset, and also that the vague temporal references to onset in the record (e.g., pain "*following* the flu shot . . ." (emphasis added)) allow for the possibility that onset could have occurred more than 48 hours from vaccination. However, at Petitioner's first post-vaccination medical appointment (for this is not a case with intervening records that rebut Petitioner's contentions), she specifically complained of "right shoulder pain since . . . flu shot [a] few weeks ago." This report was made precisely two weeks after vaccination. Ex. 2 at 6. Moreover, in one instance, Petitioner's shoulder symptoms were noted to have occurred "immediately" after vaccination. Ex. 6 at 2. Also significant is that Petitioner consistently related the onset of her pain to the vaccination on January 25, 2019. *See*, e.g., Ex. 17 at 3, 7 (reporting persistent pain that began after her January 2019 vaccination). Therefore, I find that Petitioner has provided preponderant evidence that the onset of her right shoulder pain and dysfunction began within 48 hours of receiving the flu vaccine on January 25, 2019.

Respondent appears to also argue that Petitioner is unable to satisfy the onset requirement because she "could move her right shoulder through a full range of motion" during her February 8, 2019 medical examination. Response at 8. However, the QAI for SIRVA only state that a petitioner's *pain* must occur within the specified 48-hour timeframe. 42 C.F.R. § 100.3(c)(10). *See also Portee v. Sec'y of Health & Hum. Servs.*, No. 16-1552V, 2018 WL 5284599 (Fed. Cl. Spec. Mstr. Sept. 14, 2018) (determining limited ROM manifesting within 48 hours is not required for a Table SIRVA). Accordingly, I find that Petitioner has met the second criterion to establish a Table SIRVA.

### C.     Scope of Pain

The third QAI requirement for a Table SIRVA requires a petitioner's pain and reduced range of motion to be "limited to the shoulder in which the intramuscular vaccine was administered." 42 C.F.R. § 100.3(c)(10)(iii). Respondent implies that Petitioner has not satisfied this criterion because "acupuncture notes document pain in multiple regions including [P]etitioner's neck, upper back, and right shoulder." Response at 9.

I find, however, that (for purposes of the Table SIRVA claim), a preponderance of the evidence supports the conclusion that Petitioner's injury was limited to her right

---

at 6; Ex. 3 at 48. This contradiction is not fatal to Petitioner's claim. As the Claims Court has recognized, physicians may enter information incorrectly and "typically record only a fraction of all that occurs." *Shapiro v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 532, 538 (2011) (citing *Murphy v. Sec'y of Health & Human Servs.*, 23 Cl. Ct. 726, 733 (1991)).

9

shoulder, even if symptoms elsewhere were documented in the context of treatment. It is true that Petitioner's acupuncture treatment included both her neck and back. Ex. 3 at 4-19. And I also note that Petitioner's cervical spine issues were addressed during physical therapy sessions after May 2019. Ex. 3 at 31-60. However, prior to May 2019, Petitioner's right shoulder injury was the focus of therapy – and this remained a central purpose of her medical appointments. *See, e.g.*, Ex. 2 at 8 (July 2, 2019 primary care record documenting Petitioner's follow-up exam for right shoulder pain); Ex. 6 at 2 (July 23, 2019 orthopedic note detailing Petitioner's concern regarding her right shoulder pain and charting her receipt of a steroid injection).

Moreover, I have previously recognized that this QAI criteria does not prevent a petitioner with simultaneous areas of pain due to unrelated conditions from also meeting the Table SIRVA definition. *Rodgers v. Sec'y of Health & Hum. Servs.*, No. 18-0559, 2021 WL 4772097, at *8 and n.16 (Fed. Cl. Spec. Mstr. Sept. 9, 2021). However, Petitioner must bear in mind that unrelated conditions must be separated out from the damages attributable for a Table SIRVA. *Rodgers*, 2021 WL 47772097 at n. 16; *see also Knudsen v. Sec'y of Health & Hum. Servs.*, No. 18-1971V, 2021 WL 4448738, at *5 (Fed. Cl. Spec. Mstr. Aug. 23, 2021) ("distinguishable injuries are not an additional basis for recovery"). Here, the preponderance of evidence suggests the shoulder was the main concern – and any distinguishable treatment can be differentiated in the process of calculating damages.

### D. Other Condition or Abnormality

The last QAI criteria for a Table SIRVA states that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv).

Noting that "poor posture is a 'common cause of shoulder impingement,'" Respondent suggests that Petitioner's shoulder symptoms are related to the improper alignment of her body. Response at 9. In support of this argument, Respondent references physical therapy records generated in February and March 2019. Response at 9. These records – as well as those documenting Petitioner's physical therapy through the spring and summer of 2019 – reveal that approximately 8 minutes of each session were dedicated to therapeutic interventions aimed at improving Petitioner's posture, kinesthetic and proprioceptive sensations. Ex. 3 at 27-34, 44, 51-60. However, they do not indicate that Petitioner's shoulder symptoms were actually caused by her posture.

Respondent also references a March 2019 physical therapy evaluation form. Response at 9, citing Ex. 3 at 26. Petitioner's chief complaints were noted to include headaches, difficulty sleeping, and issues with her neck, right shoulder, and upper back.

Ex. 3 at 26. In addition, the "[h]istory of [Petitioner's] present condition/mechanism of injury" was noted as "chronic pain caused by poor posture from working, daily life / after injection." *Id.* Although Petitioner asserts that the backslash denotes "two separate potential sources of pain – one for the back/neck pain, and the other for shoulder pain" (Reply at 7), this record is ambiguous. However, given the weight of other evidence, it is not necessary for me to resolve this ambiguity.

Respondent not only ignores that concerns regarding Petitioner's posture are not mentioned in the medical records, but also that Petitioner's shoulder symptoms were consistently linked to vaccination. First, Petitioner has provided preponderant evidence that she first sought treatment for her shoulder pain on February 8, 2019 – 14 days after her vaccination – and attributed her injury to a flu shot. *See* Ex. 2 at 6. And second, the vast majority of Petitioner's records consistently connect her shoulder symptoms to vaccination with no suggestion that Petitioner's posture may be causal. *See*, e.g., Ex. 3 at 48-50 (February 8, 2019 physical therapy record noting "severe pain after injection"); Ex. 17 at 3, 7 (February 19 and March 11, 2019 orthopedic notes reflecting Petitioner's report of persistent post-vaccination pain).

And despite acknowledging that Dr. Jobin assessed Petitioner with "right shoulder flu shot bursitis and biceps tendinitis" in July 2019, Respondent suggests that this diagnosis was faulty because he "appeared to rely on [P]etitioner's statement that her right shoulder pain was triggered by her vaccination, and not a review of [P]etitioner's PT or prior records." Response at 10. However, Dr. Jobin's notes from this date reveal that he performed a physical examination of Petitioner's right shoulder and reviewed her MRI before reaching a conclusion about her condition. Ex. 6 at 2. There is no indication that he believed that Petitioner's symptoms were caused by poor posture.

At best, there is Petitioner's September 11, 2019 report that "[e]xcessive work, stress and attention during work leads to pain in midback, upper back, neck and shoulder." Ex. 13 at 5. However, this record (created over seven months post-vaccination) is not enough to outweigh earlier medical records attributing Petitioner's shoulder symptoms to her January 2019 flu shot. (And it can be given weight in the context of determining damages).

Thus, the record contains preponderant evidence establishing that there is no other condition or abnormality which would explain the symptoms of Petitioner's right shoulder injury.

## V. Other Table Requirements for Entitlement

Even if a petitioner has satisfied the requirements of a Table injury or established causation-in-fact, he or she must also provide preponderant evidence of the additional requirements of Section 11(c), i.e., receipt of a covered vaccine, residual effects of injury lasting six months, etc. *See generally* § 11(c)(1)(A)(B)(D)(E). But those elements are established or undisputed. Petitioner has therefore established that she suffered a Table SIRVA, satisfying all other requirements for compensation.

## Conclusion

Based on the entire record, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation. A subsequent order will set further proceedings towards resolving damages.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master